UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIRA C., | ) |
|     Plaintiff, | ) No. 24-cv-6101 |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kira C.[1] appeals the decision of the Defendant Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 9) is DENIED; the Commissioner's motion for summary judgment (Dkt. 14) is GRANTED. The Commissioner's decision is affirmed.

**I.    BACKGROUND**

    **A.    Procedural History**

On May 17, 2021, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability beginning on November 7, 2019. (*See* Administrative Record ("R.") 15.) The applications were denied initially and upon reconsideration. (R. 65-91.) An Administrative Law Judge ("ALJ") held an Administrative Hearing and subsequently issued a July 7, 2023 decision finding that Plaintiff was not disabled. (R. 15-28.) On August 10, 2022, the Appeals Council denied Plaintiff's request for review (R. 1-6), rendering the

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

ALJ's decision the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g). Plaintiff now seeks review of that decision. (Dkt. 1.)

B.      The ALJ's Decision

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled during the relevant period. (R. 15-28); *see also* 20 C.F.R. §§ 404.1520(a) (DIB), 416.920(a) (SSI). The ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020 and had not engaged in substantial gainful activity since her alleged disability onset date of November 7, 2019. (R. 17.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the knee and shoulder, obesity, asthma, diabetes mellitus, and anxiety. (R. 17.) The ALJ determined Plaintiff also had a non-severe impairment of the left knee. (R. 17-18.) The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. (R. 18-20.)

Before step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light[2] work with both exertional and non-exertional limitations. (R. 20, 25.) As relevant here, the ALJ found that Plaintiff could "understand, remember and carry out simple instructions"; "use judgment to make simple work-related decisions"; and "tolerate occasional interactions with coworkers and supervisors" but "no interactions with the general public." (*Id*.) The ALJ further found Plaintiff could not "perform work requiring a specific

---

[2]   The ALJ did not mention the "light" exertional level within the RFC but later explained that he was limiting Plaintiff to "light level work" with further exertional and non-exertional limitations. (R. 25.)

2

production rate such as assembly line work, but c[ould] tolerate end of day quotas" and "deal with occasional changes in a routine work setting." (*Id.*)

At step four, the ALJ concluded Plaintiff would be unable to perform her past relevant work. (R. 26-27.) At step five, the ALJ concluded that, given Plaintiff's RFC, age, education, and work experience, there were jobs in significant numbers in the national economy Plaintiff could perform. (R. 27-28.) Thus, the ALJ found Plaintiff was not disabled under the Social Security Act for the purposes of her DIB application and SSI application. (R. 28.)

## C.   Standard of Review

On review, the Court does not "merely rubber stamp the ALJ's decision." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). That said, "[t]he findings of the Commissioner [] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Prill*, 23 F.4th at 746. Substantial evidence is "more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). The Court does "'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [the Court's] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). ALJs "are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053. If substantial evidence supports the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted).

## II.   ANALYSIS

Plaintiff argues the ALJ erred in failing to sufficiently account in Plaintiff's mental RFC for the moderate limitations the ALJ found Plaintiff had in the areas of concentrating or persisting

3

and interacting with others.[3] In particular, Plaintiff focuses on the ALJ's alleged failure to accommodate her: (1) claimed lifelong multi-weekly, multi-hour "dissociative episodes," in which she would affect a childlike personality and wander off; and (2) ability to interact with others.

### A. The ALJ's Analysis

Before determining Plaintiff's RFC, the ALJ evaluated Plaintiff's mental limitations using the related four "Paragraph B" criteria for assessing mental limitations. The ALJ considered that state psychological evaluators for Plaintiff's SSI application at the initial and reconsideration levels[4] had found no limitations in three paragraph B categories (understanding, remembering or applying information; interacting with others; and adapting or managing oneself) and a mild limitation in the fourth paragraph B category (concentrating, persisting or maintaining pace). The ALJ, though, found that the consultants had not had the benefit of the full record and accordingly deemed their opinions "minimally persuasive." (R. 25.) Upon review of the record as a whole, the ALJ found moderate limitations in the four paragraph B criteria. (R. 19-20.) In interacting with others, the ALJ noted Plaintiff had not reported difficulties getting along with others and had been able to socialize and attend a party, but had reported with a restless and anxious mood at some medical appointments and was tearful when discussing past trauma. (R. 19.) The ALJ noted that, as to concentrating, persisting, or maintaining pace, Plaintiff can finish tasks, despite reporting some difficulty concentrating due to pain and mental impairments, and Plaintiff had been attentive, alert, fully oriented, with intact thought processes, despite general complaints of low mood and energy. (R. 19-20.)

---

[3] Plaintiff raises no challenge to the ALJ's assessment of her physical impairments or the physical RFC, so the Court will not address those.

[4] There were no psychological consultants for Plaintiff's DIB application.

4

The ALJ emphasized he was "giv[ing Plaintiff] considerable benefit of the doubt in finding that [her mental impairments] cause a moderate limitation in each of the paragraph B criteria" and in "adopt[ing] very generous functional limitations." (R. 25.) Specifically, to accommodate any limitations in interactions with others, the ALJ "limited her to occasional interactions with supervisors and coworkers" and found she should have "no interactions with the general public." (*Id*.) Beyond Plaintiff's recent reports in medical visits and testimony, the ALJ found no support for Plaintiff's claimed dissociative episodes, which she insisted occurred multiple times per week for hours at a time for her entire life, and during which she would regress to a childlike state, before forgetting the episode entirely; when describing the episodes, Plaintiff associated them with stress or strong emotions. (R. 24.) The ALJ noted that no treatment records mentioned such episodes before 2022, no prior work records documented any such episodes while Plaintiff was at work, and no medical provider had observed any dissociative episodes. (*Id*.) Neither Plaintiff nor her husband mentioned the purportedly frequent and long-lasting dissociative episodes in their function reports. (*Id*.) The ALJ further noted Plaintiff had reported improvement in the episodes in February 2023. (R. 24-25.) The ALJ found "no indication that these episodes will persist for a continuous period of 12 consecutive months" but nevertheless considered that the episodes were reportedly triggered "by stress" and accordingly limited Plaintiff's RFC to only "simple tasks with simple decision making and only occasional changes in a routine work setting." (R. 25.) The ALJ also overtly sought to address Plaintiff's asserted memory and concentration limitations and "intermittently circumstantial thought processes" by limiting her to: (1) "never climbing ladders, ropes or scaffolds"; (2) "simple instructions with simple work-related decisions"; and (3) "no work requiring a specific production rate such as assembly line work" although end of day quotas were permissible. (*Id*.)

B.  **The ALJ Properly Accounted for Plaintiff's Limitations**

Plaintiff argues that the ALJ should have explained his reasoning for not including an "off-task limitation, especially if he credited Plaintiff's complaints of dissociation to the extent that he acknowledged they needed accommodation in the RFC." (Dkt. 10 at 9.) The Court disagrees.

As an initial matter, the ALJ expressed misgivings about Plaintiff's descriptions of her alleged dissociative episodes, which, in the ALJ's view, were undermined by there being no suggestion that any medical provider or prior employer had witnessed one of Plaintiff's supposedly frequent (two to four times per week) and hours-long (from one to four hours apiece) "episodes," and neither Plaintiff nor her husband mentioned them in a third-party function report. The ALJ, in fact, credited Plaintiff's dissociations *only* insofar as to accept that Plaintiff attributed them to stress. The ALJ then expressly accommodated any limitation in Plaintiff's ability to handle stress by simplifying tasks and decision-making and limiting changes in her routine work setting.

Plaintiff provides no basis for arguing that, merely because the ALJ sought to limit Plaintiff's exposure to stress—the sole accommodation he found was warranted for Plaintiff's asserted dissociations—he was also required to provide an "off-task" limitation. (Dkt. 10 at 9.) But, because the ALJ identified the symptoms he credited and accommodated those, the mental RFC is not deficient on that ground. *See Stobbe v. Kijakazi*, No. 20-C-777, 2021 WL 3493603, at *21 (E.D. Wis. Aug. 9, 2021) (affirming on similar facts because ALJ had "tailored the RFC to match [claimant's] specific limitations"); *Peter L. v. Saul*, No. 19-cv-566, 2021 WL 2473799, at *3-4 (N.D. Ill. June 17, 2021) (upholding RFC mental limitation of "simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production requirements," where it accounted for all mental limitations ALJ found, including depression, frequent crying spells, and anger outbursts); *see also Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no

6

error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'") (alteration in original) (citation omitted).

Plaintiff also faults the ALJ for "conclusor[il]y" determining Plaintiff could tolerate no interaction with the public but could tolerate occasional interaction with coworkers and supervisors. Again, though, viewing the ALJ's opinion as a whole, the ALJ sufficiently explained his conclusion. In describing Plaintiff's moderate limitation in interacting with others, the ALJ explained that Plaintiff stays in touch with others, spends time with friends, attended a party, and reported no problems interacting with others. (R. 19.) The ALJ nonetheless credited that Plaintiff had had a restless and anxious mood and was emotional when recounting past trauma. (*Id.*) The ALJ sought to accommodate Plaintiff's "complaints regarding interacting with others" by limiting interactions with supervisors and coworkers and preventing interaction with the general public. Again, without Plaintiff pointing to some specific symptom the ALJ credited but did not accommodate or that he overlooked, the Court discerns no error. *See Spring W. v. Saul*, No. 20-cv-1864, 2021 WL 2529615, at *5 (N.D. Ill. June 21, 2021) (holding that ALJ had "accommodated [claimant's] issues with concentration, stress, and engaging with others by reducing her work to simple, routine, and repetitive tasks in a low-stress environment, with few work-related decisions, and no interaction with the public and only superficial interaction with coworkers"). It is not the Court's function to reweigh evidence. *See Warnell*, 97 F.4th at 1052-53.

Even if the ALJ's analysis on either issue were flawed, Plaintiff has not shown any non-harmless error; Plaintiff does not propose any accommodation or restriction that might address her professed limitations or point to evidence that she cannot perform the tasks the ALJ found she could perform. *See Jozefyk v. Berryhill*, 932 F.3d 492, 498 (7th Cir. 2019) (finding harmless error in accommodating Plaintiff's CPP limitations where claimant hypothesized no restrictions that might address his claimed limitations and cited no evidence he could not perform simple, routine,

7

and repetitive tasks); *see also Spring W.*, 2021 WL 2529615, at *6 (finding no reversible mental RFC error where claimant did not identify record support for additional limitations). No remand is warranted.

## III.   CONCLUSION

For the reasons detailed above, Plaintiff's motion for summary judgment (Dkt. 9) is denied, and the Commissioner's motion (Dkt. 14) is granted. The decision of the Commissioner is affirmed.

ENTERED: September 5, 2025

_____
Hon. Keri L. Holleb Hotaling
United States Magistrate Judge